UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JUAN CARLOS ZAVALA,

Plaintiff,

v.

CAROLYN W. COLVIN,
Commissioner of Social Security,[1]

Defendant.

No.  CV-12-3076-JTR

ORDER GRANTING
DEFENDANT'S MOTION  FOR
SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are cross-motions for summary judgment.  ECF Nos. 15, 17.   Attorney D. James Tree represents Plaintiff; Special Assistant United States Attorney Christopher J. Brackett represents the Commissioner of Social Security (Defendant).  The parties have consented to proceed before a magistrate judge.  ECF No. 6.  After reviewing the administrative record and the briefs filed by the parties, the court **grants** Defendant's Motion for Summary Judgment and **denies** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

In 2001, the Social Security Administration determined that Plaintiff, a minor, suffered from ADHD, borderline intellectual functioning, and a learning disorder and, therefore, he met Listing 112.11A and 112.11B(2)(b)(d).  Tr. 34.   In

---

[1]As of February 14, 2013, Carolyn W. Colvin succeeded Michael J. Astrue as Acting Commissioner of Social Security.  Pursuant to FED.R.CIV.P. 25(d), Commissioner Carolyn W. Colvin is substituted as the Defendant, and this lawsuit proceeds without further action by the parties.  42 U.S.C. § 405(g).

2008, when Plaintiff turned 18 years old, the Social Security Administration terminated his benefits. Tr. 42-44. Plaintiff, accompanied by his mother, attended a hearing at the Social Security Office in Yakima on June 23, 2008. Tr. 54-60. The hearing officer concluded Plaintiff's condition did not meet or equal a current listed impairment. Tr. 58. Plaintiff's mother requested reconsideration, and she asserted that Plaintiff suffered from ADHD and a compulsive explosive disorder. Tr. 48. She said that Plaintiff needs someone to care for him, he is impatient, and he was expelled from school due to his destructive behavior. Tr. 48. Reconsideration was denied. Tr. 50-52. Plaintiff next requested a hearing with an administrative law judge, and the hearing was scheduled for August 14, 2009. Tr. 61; 63. Plaintiff failed to appear for the hearing,[2] and his claim was dismissed. Tr. 78; 303-06. Plaintiff requested review, and the Appeals Council vacated the dismissal and remanded to the ALJ for a hearing. Tr. 307-8; 309-11. On November 1, 2010, Plaintiff attended a hearing in front of ALJ R. J. Payne. Tr. 349-74. At the hearing, medical expert Marian Martin, Ph.D., Plaintiff's mother, and Plaintiff, who appeared *pro se*, testified. Tr. 354-74. The ALJ denied benefits on December 2, 2010. Tr. 19-28. The Appeals Council denied Plaintiff's request for review. Tr. 6-8. The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here. At the time of the hearing, Plaintiff was 21 years old, and he lived in Yakima with his mother and grandfather. Tr. 359; 367. He testified that he had not looked for work, and his mother was on disability. Tr. 359-60. Plaintiff dropped out of

---

[2]Plaintiff asserted that he did not receive the notice of the hearing, and he explained that he was quite ill on the day of the hearing. Tr. 79.

school in the tenth grade when his brother died, and he has not tried to earn a GED.
Tr. 360.  Plaintiff does not have a driver's license.  Tr. 360.  When the ALJ asked
Plaintiff why he could not work, Plaintiff responded, "It's not that I can't work; it's
just that I don't feel like – I don't know.  I don't get motivated to do anything.  I'm
always just feeling low. . . .  I've always got my brother and all that tragic stuff on
my mind still."  Tr. 361.  Plaintiff said he spends his days riding his bike around
town and he sometimes visits friends.  Tr. 363.  He watches between two and three
hours of television per day.  Tr. 364.  He acknowledged that he does not help much
with housework because he "get[s] lazy."  Tr. 364.  Plaintiff said he has a
girlfriend with whom he "sit[s] at home," and he explained: "[i]t's a really boring
relationship, but I just like her because she's around me all the time."  Tr. 366.

Plaintiff admitted that he is not taking any medication.  Tr. 363.  Plaintiff
smokes one pack of cigarettes per week.  Tr. 366-67.

At the hearing, Plaintiff's mother testified that he cannot work because he
cannot get along with other people.  Tr. 368.  She described Plaintiff as "very
moody."  Tr. 368.  She said he cannot stay long enough at the department of motor
vehicles to get a license because he cannot be around people.  Tr. 369.

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set
out the standard of review:

> A district court's order upholding the Commissioner's denial of
> benefits is reviewed de novo. *Harman v. Apfel*, 211 F.3d 1172, 1174
> (9th Cir. 2000).  The decision of the Commissioner may be reversed
> only if it is not supported by substantial evidence or if it is based on
> legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).
> Substantial evidence is defined as being more than a mere scintilla,
> but less than a preponderance. *Id*. at 1098.  Put another way,
> substantial evidence is such relevant evidence as a reasonable mind
> might accept as adequate to support a conclusion. *Richardson v.
> Perales,* 402 U.S. 389, 401 (1971).  If the evidence is susceptible to
> more than one rational interpretation, the court may not substitute its

judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. " 404.1520(a), 416.920(a); see *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4).  If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform.  *Batson v. Commissioner of Social Sec. Admin.,* 359 F.3d 1190, 1193-94 (2004).  If a claimant cannot make an adjustment to other work in the national economy, a finding of disabled is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).   Thus, the definition of disability consists of both medical and vocational components.  *Edlund*, 253 F.3d at 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.   20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities.  If so, benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  If not, the decision maker proceeds to step two, which determines whether plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a

number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404, Subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled.   If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past.  If a plaintiff is able to perform previous work, that plaintiff is deemed not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, plaintiff's residual functional capacity (RFC) is considered.  If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's RFC, age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen*, 482 U.S. at 137 (1987).

The initial burden of proof rests upon plaintiff to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once plaintiff establishes that a physical or mental impairment prevents the performance of previous work.  The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ALJ'S FINDINGS

The ALJ found that Plaintiff turned age 18 on July 28, 2007.  Tr. 21.  Based upon a redetermination of disability under the rules for adults who file new applications, Plaintiff was no longer considered disabled as of January 1, 2008.  Tr. 21.  At step two, the ALJ found that Plaintiff suffered from the severe impairment

of borderline intellectual functioning.  Tr. 21.

At step three, the ALJ found Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments.  Tr. 23.  The ALJ determined that since January 1, 2008, Plaintiff had the residual functional capacity ("RFC") as follows:  a full range of work at all exertional levels except the claimant has some non-significant mental limitations.  The work the claimant performs should be simple, repetitive and not require any math skills.  Furthermore, the claimant may need assistance with goal setting and remaining on task."  Tr. 24.

At step four, the ALJ found that Plaintiff has no past relevant work.  Tr. 27.  At step five, the ALJ concluded that since January 1, 2008, considering Plaintiff's age, education, work experience and RFC, jobs exist in significant numbers in the national economy that Plaintiff can perform.  Tr. 27.  The ALJ noted that while Plaintiff's ability to perform work is compromised by nonexertional limitations, those limitations have little or no effect on the occupational base of unskilled work at all exertional levels.  Tr. 28.  The ALJ concluded a finding of "not disabled" was appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.  Tr. 28.

### ISSUES

Plaintiff alleges the ALJ erred by (1) failing to give significant weight to Dr. Dougherty's opinion that Plaintiff is incapable of working full-time; (2) failing to fully develop the record related to Plaintiff's mental impairments; (3) failing to find ADHD as a severe impairment at step two; and (4) failing to obtain testimony from a vocational expert.  ECF No. 15 at 5-6.

### DISCUSSION

**A.    Roland Dougherty, Ph.D.**

Plaintiff contends that the ALJ erred by finding Plaintiff not disabled, because Dr. Dougherty, whose opinion the ALJ gave great weight, opined Plaintiff

could not work full time.  ECF No. 15 at 7-10.  Specifically, Plaintiff argues that Dr. Dougherty found Plaintiff had a "GAF of 50, i.e., unable to work," and that Plaintiff was able to carry out practical tasks "for just brief periods of time" and, therefore, he was incapable of sustaining full time employment.  ECF No. 15 at 7.

Plaintiff asserts that the GAF score represents Dr. Dougherty's opinion that Plaintiff was unable to work full-time.  Plaintiff misinterprets the importance of a GAF score in the disability context.   GAF or "Global Assessment of Functioning" is a rating of overall psychological functioning.  Diagnostic and Statistical Manual of Mental Disorders (4th ed.2000)("DSM-IV") at 34.  A GAF score between 41 and 50 denotes "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  DSM-IV at 32.

However, an ALJ has no obligation to credit or even consider GAF scores in the disability determination.  *See* 65 Fed. Reg. 50746, 50764 65 (Aug. 21, 2000) ("The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorders listings.").  While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002).   Moreover, the GAF scale is no longer included in the *DSM–V*.  Diagnostic And Statistical Manual of Mental Disorders, 16 (5th ed.2013).[3]  Thus, Plaintiff's conclusion that a GAF score of 50 is a definitive opinion that Plaintiff is unable to work for purposes of a disability determination is incorrect.

--------

[3]"It was recommended that the GAF be dropped from the DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice."  Diagnostic And Statistical Manual of Mental Disorders, 16 (5th ed.2013).

Next, Plaintiff contends that Dr. Dougherty opined that Plaintiff could not work full-time because he "would only be able to carry out practical physical tasks for just brief periods of time." ECF No. 15 at 7. Plaintiff again mischaracterizes Dr. Dougherty's opinion. Dr. Dougherty examined Plaintiff on December 12, 2007. Tr. 253-61. Dr. Dougherty noted Plaintiff's recitation of his symptoms, as well as Plaintiff's mother's description of her son's problems, and he reviewed Plaintiff's school and medical records. Tr. 253-58. Dr. Dougherty administered a mental status exam. Tr. 258-59.

Ultimately, Dr. Dougherty diagnosed Plaintiff with ADHD, severe, mixed type, rule out bipolar mood disorder, along with dependent and avoidant personality traits, rule out borderline or schizotypal traits. Tr. 260. Dr. Dougherty noted that Plaintiff "shows very poor persistence at tasks that require much effort. . . . His attendance at school has been very poor and he reported problems with persistence at work. He appears to quit or avoid tasks easily." Tr. 260. Dr. Dougherty also noted that Plaintiff said he would like to attend a magnet school and train to become a barber. Tr. 261. Dr. Dougherty concluded that Plaintiff was "was able to think rationally. He should be able to carry out practical physical tasks for at least brief periods." Tr. 261.

Contrary to Plaintiff's assertion, Dr. Dougherty opined Plaintiff could carry out tasks for "at least brief periods." Tr. 261. The ALJ incorporated this limitation into Plaintiff's RFC.[4] As such, Plaintiff's claim that the ALJ erred by failing to find him disabled, based upon the opinions of Dr. Dougherty, fails. Therefore, the ALJ did not err by failing to find Plaintiff disabled based upon the opinions of Dr. Dougherty.

---

[4]"The work the claimant performs should be simple, repetitive and not require any math skills." Tr. 24.

**B.    Duty to Develop the Record**

Plaintiff argues that the ALJ erred by failing to fully develop the record relating to his mental impairments. ECF No. 15 at 10. Specifically, Plaintiff points to the opinion of Margaret Moore, Ph.D., the medical expert ("ME") at the first hearing, who opined that "insufficient evidence" existed to "make diagnoses" under several disorders. ECF No. 15 at 10. Plaintiff also complains that Dr. Martin, the ME at the second hearing, found insufficient evidence to diagnose certain disorders. ECF No. 15 at 10.

An ALJ has a duty "to fully and fairly develop the record and to assure the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). However, the law imposes a duty on the ALJ to develop the record in only some circumstances. 20 C.F.R. § 416.912(d)-(f) (recognizing a duty on the agency to develop medical history, re-contact medical sources, and arrange a consultative examination if the evidence received is inadequate for a disability determination). The duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); see 20 C.F.R. § 416.912(e).

As support for his argument, Plaintiff cites several pages from a check-the-box Psychiatric Review Technique forms completed by both Margaret Moore, Ph.D., and Marian F. Martin, Ph.D., both non-examining physicians. ECF No. 15 at 10-11. The pages Plaintiff cites do not support his argument that the evidence related to his mental abilities was not sufficiently developed. Instead, the evidence simply reflects the respective physician opinions that, after reviewing the medical records, no evidence established that Plaintiff suffered from the specified mental disorders. See Tr. 287-91; 293-94; 332. As a result, Plaintiff has failed to establish that the evidence relating to his mental impairments was ambiguous or inadequate to allow for proper evaluation, and thus the ALJ did not fail to develop

1    the record.

2         Plaintiff also complained that the ALJ's refusal to grant counsel's request for

3    a supplemental hearing was error because Plaintiff was unrepresented at the

4    hearing.  ECF No. 15 at 10.  The absence of counsel alone is not sufficient ground

5    for remand.  *Vidal v. Harris*, 637 F.2d 710, 713 (9th Cir. 1981).  Lack of counsel

6    does not affect the validity of the hearing and warrant remand, unless the claimant

7    can demonstrate prejudice or unfairness in the administrative proceedings.  *Id.*  In

8    this case, Plaintiff was repeatedly notified that he had a right to counsel in

9    correspondence from the Social Security Administration, and from the ALJ at the

10   hearing.  Tr. 65; 69; 77; 317; 352.   The ALJ also informed Plaintiff that he would

11   keep the record open for ten days after the hearing, so Plaintiff could review his

12   file and submit additional evidence if necessary.  Tr. 373.  As Defendant points

13   out, Plaintiff retained counsel in December 2010, and the Appeals Council did not

14   refuse Plaintiff's request for review until March 2011.  ECF No. 17 at 10; Tr. 6-7;

15   347-48.  Plaintiff's counsel failed to submit additional evidence to the Appeals

16   Council,[5] thus raising the inference that counsel believed the record was

17   sufficiently developed.   Plaintiff failed to establish that his lack of counsel

18   prejudiced him and thus required a new hearing.

19   **C.    Step Two**

20        Plaintiff contends that the ALJ erred by failing to find ADHD as a severe

21   impairment.  ECF No. 15 at 11.   At step two of the sequential evaluation, the ALJ

22   determines whether a claimant suffers from a "severe" impairment, *i.e.*, one that

23   significantly limits his physical or mental ability to do basic work activities.  20

24   C.F.R. §§ 404.1520, 416.920(c).   At step two, a claimant must make a threshold

25   showing that his medically determinable impairments significantly limit his ability

26   _____

27        [5]See 20 C.F.R. § 416.1476(b)(authorizing submission of supplemental

28   evidence to Appeals Council).

1  to perform basic work activities.  See *Bowen*, 482 U.S. 137; 20 C.F.R. §§

2  404.1520(c), 416.920(c).  "Basic work activities" refers to "the abilities and

3  aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).

4         To satisfy step two's requirement of a severe impairment, the claimant must

5  prove the existence of a physical or mental impairment by providing medical

6  evidence consisting of signs, symptoms, and laboratory findings; the claimant's

7  own statement of symptoms alone will not suffice.  20 C.F.R. §§ 404.1508,

8  416.908.  The fact that a medically determinable condition exists does not

9  automatically mean the symptoms are "severe," or "disabling" as defined by the

10 Social Security regulations.  *See*, e.g., *Edlund*, 253 F.3d at 1159-60; *Fair v. Bowen*,

11 885 F.2d 597, 602-03  (9th Cir. 1989); *Key v. Heckler*, 754 F.2d 1545, 1549-50

12 (9th Cir. 1985).

13        In this case, the ALJ found that Plaintiff's diagnosed ADHD does not

14 significantly impair his ability to work and thus was not a severe impairment:

15        [T]he record does not show any examination findings, which would
16        support any functional limitations from attention deficit hyperactivity
         disorder (ADHD).  Yet, in viewing the evidence in a light most
17        favorable to the claimant, the undersigned finds ADHD has not
         resulted in any significant limitation in his ability to do basic work
18        activities.
19
20 Tr. 22.

21        None of the evidence Plaintiff cites supports his argument that ADHD

22 should have been deemed a severe impairment.  For example, G. Gilbert, Ph.D.,[6]

23 examined Plaintiff on June 23, 2001, when Plaintiff was eleven years old.  Tr. 247-

24 48.  The purpose of the present proceeding was to determine if Plaintiff, as a

25 young adult over the age of 18, qualified to receive benefits as an adult.  42 U.S.C.

26 _____

27        [6] Plaintiff's brief incorrectly attributes this opinion to "Dr. Keys."  ECF No.
28 15 at 12.

§1382c(a)(3)(H)(iii)(I).  As a result, Dr. Gilbert's assessment of Plaintiff as an eleven year-old boy deserves little, if any, weight in determining if Plaintiff's ADHD currently constitutes a severe impairment.

Plaintiff also argues that Dr. Dougherty opined Plaintiff's ADHD would only allow him to carry out physical tasks for brief periods.  ECF No. 15 at 12. While Dr. Dougherty diagnosed Plaintiff with ADHD, he noted that Plaintiff "refuses to take medication as prescribed for his ADHD."  Tr. 260.  If an impairment can be controlled effectively with treatment, it is not disabling for social security purposes.  *See Warre v. Comm'r of Social Security Administration*, 439 F.3d 1001, 1006  (9th Cir. 2006).  Moreover, as discussed above, Plaintiff's characterization that Dr. Dougherty found Plaintiff unable to work is inaccurate. Instead, Dr. Dougherty opined that Plaintiff "should be able to carry out practical, physical tasks for at least brief periods."  Tr. 261.  Thus, Plaintiff's argument that Dr. Dougherty's opinion supports finding Plaintiff's ADHD was a severe impairment fails.

The remaining evidence Plaintiff cites, the opinions from non-examining physicians Margaret Moore, Ph.D., Marian Martin, Ph.D., and James Bailey, Ph.D., similarly do not support his argument the ALJ erred by finding Plaintiff's ADHD was not a severe impairment.  ECF No. 15 at 12-13.  On January 2, 2008, James Bailey, Ph.D., completed a Psychiatric Review Technique form and assessed Plaintiff with moderate limitations in maintaining social functioning and in maintaining concentration, persistence or pace.  Tr. 276.  Dr. Bailey opined that the medical evidence did not fully support Plaintiff's allegations, and in light of Dr. Dougherty's opinion, Plaintiff is capable of completing simple work.  Tr. 273.

On August 14, 2009, Dr. Moore completed a Psychiatric Review Technique in which she opined that Plaintiff would experience, at most, moderate difficulties in maintaining concentration, persistence, or pace.  Tr. 295; 300.  Similarly, on November 1, 2010, Dr. Martin completed a Psychiatric Review Technique in

which she opined that Plaintiff had a single moderate limitation in maintaining concentration, persistence and pace.  Tr. 339.  All the non-examining physicians agreed that Plaintiff had moderate limitations related to concentration, persistence or pace, but that evidence does not establish a severe impairment that significantly limits his physical or mental ability to perform basic work activities.  *See* 20 CFR §404.1521(a); SSR 96-3p  (an impairment is "not severe" when medical evidence establishes only a slight abnormality that has "no more than a minimal effect on the ability to do basic work activities") .

Moreover, an ALJ's error in failing to find a severe impairment at step two may be harmless, where ALJ considered the limitations resulting from the impairment later in the sequential disability evaluation process.  *Lewis v. Astrue*, 498 F.3d 909, 911  (9th Cir. 2007); *Burch v. Barnhart*, 400 F.3d 676, 682  (9th Cir. 2005).  In this case, Plaintiff's RFC accommodated ADHD-related difficulties Plaintiff might experience with sustained concentration by limiting him to simple and repetitive work, with the recognition that he "may need assistance with goal setting and remaining on task."  TR. 24.  As a result, even if the ALJ's failure to find ADHD as a severe impairment was error, such error was harmless.  Accordingly, on this record, the ALJ did not err in failing to find ADHD as a severe impairment at step two.

**D.    Vocational Expert**

Plaintiff argues that the presence of his "significant non-exertional limitations" required the ALJ to obtain testimony from a vocational expert to determine if a significant number of jobs existed in the national economy that he could perform.  ECF No. 15 at 13.  In general, where a claimant suffers only from exertional limitations, the ALJ may apply the Medical Vocational Guidelines (the "Grids")[7] at step five to match the claimant with the appropriate work.  *Reddick v.*

---

[7]20 C.F.R. Part 404, Subpt. P, App. 2.

*Chater*, 157 F.3d 715, 729 (9th Cir. 1998). The Grids may also be used when evaluating solely non-exertional impairments. SSR 85-15; *Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir. 1995). An ALJ must obtain evidence from a vocational expert only when Plaintiff suffers from significant and 'sufficiently severe' non-exertional limitations that are not accounted for in the Grid. *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007); [8] *see also Tucker v. Heckler*, 776 F.2d 793, 795-96 (8th Cir. 1985) (unnecessary to call vocational expert where ALJ thoroughly considered claimant's non-exertional impairments and explicitly determined that they did not diminish claimant's exertional capacities). In other words, if a claimant's non-exertional limitations "significantly limit the range of work" he can perform, mechanical application of the Grids is inappropriate and a vocational expert is necessary to describe what, if any, jobs existed in the national economy that the claimant could perform. *Desrosiers v. Sec'y of Housing and Health Servs.*, 846 F.2d 573, 577 (9th Cir. 1988). The determination of whether a non-exertional limitation significantly limits the range of work the claimant is able to perform is left to the ALJ. *Id.*

In this case, Plaintiff contends vocational testimony was required simply because he has non-exertional impairments. But the ALJ specifically found that Plaintiff had an ability to perform work at all exertional levels, and that the non-exertional limitations had little or no effect on the occupational base of unskilled

---

[8] "The severity of the limitations at this step that require testimony from a vocational expert "must be greater than the severity of impairments determined at step two…" *Hoopai,* at 1076, *citing Heckler v. Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 76 L.Ed. 2d 66 (1983) (explaining that the reason for establishing the Grids as a substitute for vocational experts in most cases was to improve uniformity in the treatment of similarly situated claimants and increase efficiency in the disposition of cases).

1  work at all exertional levels.  Tr. 28.   Under these facts, the ALJ properly relied on

2  the Grids, and the ALJ's determination without the testimony from a vocational

3  expert was not error.

4  **CONCLUSION**

5          Having reviewed the record and the ALJ's conclusions, this court finds that

6  the ALJ's decision is supported by substantial evidence and free of legal error.

7  Accordingly,

8          **IT IS ORDERED**:

9          1.      Defendant's Motion for Summary Judgment, **ECF No. 17**, is

10  **GRANTED**.

11          2.      Plaintiff's Motion for Summary Judgment, **ECF No. 15,** is **DENIED**.

12          The District Court Executive is directed to file this Order, provide copies to

13  the parties, enter judgment in favor of Defendant, and **CLOSE** this file.

14          DATED October 31, 2013.

15
16                      _____

17                          JOHN T. RODGERS
                            UNITED STATES MAGISTRATE JUDGE
18
19
20
21
22
23
24
25
26
27
28